GRIFFIS, J.,
for the Court.
¶ 1. Columbus Carr was convicted of capital murder and sentenced to life in prison. The trial court denied Carr’s motions for judgment notwithstanding the verdict and for a new trial, and Carr perfected his appeal. Finding no error, we affirm.
FACTS
¶ 2. In the early morning hours of December 31, 2001, Wayne King returned to his home to find that his mother, Vestoria King, had been murdered. Wayne promptly notified the police.
¶3. Officer Earnest Bradley , was the first on the scene. Officer Bradley testified that when he arrived, the house was in shambles. The furniture was knocked over and blood was everywhere. Ms. King’s body was lying face up on the floor, and it was obvious that she had received multiple stab wounds. Officer Bradley then notified the police chief, Charles McGhee.
¶ 4. After he arrived at the scene, Chief McGhee spoke with Officer Bradley. Chief McGhee recalled that he saw Carr walking from the direction of the King residence, around one o’clock that morning, when McGhee returned home. At that time, when Carr saw Chief McGhee in his driveway, Carr crossed to the other side of the street. Chief McGhee left the scene and went looking for Carr. Chief McGhee eventually found Carr at Ira Simmons’ house, which was located almost di *1081 rectly behind the King residence. Chief McGhee testified that as soon as he found Carr, he noticed blood on Carr’s clothing. Chief McGhee placed Carr under arrest and read him the Miranda warnings.
¶ 5. Ira Simmons testified that, on the night in question, Carr was in and out of Simmons’ house. Around midnight, Carr left and said he was going to try to borrow some money from the Kings. Simmons noticed that when Carr returned later that evening he was no longer wearing his jacket. The police found Carr’s jacket, soaked with blood, under the steps to Simmons’ house.
¶ 6. Carr ultimately confessed that he went to the King residence to attempt to borrow some money. Carr told the police that when Ms. King refused to loan him ten dollars, he “snapped.” Carr confessed to hitting Ms. King with a metal chair and stabbing her multiple times. Carr also admitted that after he killed Ms. King, he looked through the house and her purse trying to find money.
¶ 7. Carr’s clothing was sent to the Mississippi State Crime Lab for DNA analysis. A forensic scientist from the crime lab testified that there was a complete match between the sample of blood taken from the victim and the blood found on Carr’s clothing.
¶ 8. At trial, Carr was convicted of capital murder with the underlying felony of armed robbery. He was sentenced to life in prison. Aggrieved, Carr now appeals asserting that the trial court erred by: (1) holding that Carr did not make out a prima facie case of gender and race discrimination during the jury selection process; (2) denying Carr’s motion in limine to suppress his statements to the police; (3) denying Carr’s motion to abolish peremptory challenges; (4) admitting certain exhibits over Carr’s objection; (5) denying Carr’s proposed jury instruction D-Sl; and (6) denying Carr’s motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
ANALYSIS

I. Whether the trial court erred in holding that Carr did not make out a prima facie case of gender and race discrimination during the jury selection process.

¶ 9. Carr claims that the trial court committed reversible error in finding that he had failed to establish a prima facie case of discrimination by the prosecutor in jury selection on the basis of both sex and race. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that in order to make a prima facie showing of purposeful discrimination in the selection of a petit jury, a defendant must establish that he is a member of a cognizable racial group, that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race, and that this raises an inference that the prosecutor used that practice to exclude veniremen from the jury on account of their race. The Batson rationale has also been extended to gender discrimination. Bounds v. State, 688 So.2d 1362, 1366 (Miss.1997).
¶ 10. Only after the defendant presents a prima facie case of gender discrimination does the burden shift to the State to come forward with a gender-neutral explanation for challenging the jurors. Mack v. State, 650 So.2d 1289, 1297 (Miss.1994). Stated somewhat differently, before the trial judge is required to conduct a Batson hearing, it must be shown that a prima facie case for purposeful discrimination exists. Puckett v. State, 737 So.2d 322, 334 (¶ 32) (Miss.1999).
*1082 ¶ 11. Carr claims that the prosecutor engaged in gender discrimination in the use of peremptory challenges when the prosecutor used four out of seven challenges against females. The trial court found that Carr had failed to establish a prima facie case of gender discrimination because the jury that had been selected at that point consisted of four males and three females.
¶ 12. Carr also claims that the prosecutor engaged in racial discrimination in the use of his peremptory challenges. Carr argues that the prosecutor used approximately forty-three percent, or three out of seven, of his challenges against blacks. The trial court noted that at that point the selected jury consisted of four whites and three blacks and determined that Carr had not made a case for racial discrimination.
¶ 13. In Conerly v. State, 544 So.2d 1370, 1372 (Miss.1989), the State only used five of its peremptory challenges, all to eliminate blacks, and this was found to create an inference of purposeful discrimination. The present case is distinguishable from Conerly because here the State did not only use its challenges against blacks and females, but also against whites and males.
¶ 14. In Williams v. State, 794 So.2d 181, 184(¶ 9) (Miss.2001), the State used two out of six peremptory challenges against blacks, and four against whites. The State also accepted two black venire-persons for the jury. Id. The court found that this did not suggest a pattern or raise an inference of discrimination. Williams is factually similar to the case at hand. Here, the State only used three out of seven challenges against blacks. The other four of its challenges were against whites. Similarly, the State only used four out of seven challenges against females, and the other three against males. Furthermore, the State accepted three females and three blacks on the jury. Had the State used only three of its challenges, all against blacks, or only four of its challenges, all against females, as in Conerly, this would have been sufficient to create an inference of purposeful discrimination. However, that is not the case.
¶ 15. As such, we find that the State’s use of peremptory challenges did not suggest a pattern or raise an inference of discrimination. Therefore, we find that the trial court did not commit error.

II. Whether the trial court erred in denying Carr’s motion in limine to suppress his statements to the police.

¶ 16. Carr asserts that the trial court committed reversible error in denying his motion in limine to suppress his statements to the police. Carr argues that the statements were inadmissible because they were not given voluntarily.
¶ 17. A trial court is given deference in the admissibility of an incriminating statement by a criminal defendant. Baldwin v. State, 757 So.2d 227, 231 (¶ 13) (Miss.2000). In Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996), the Mississippi Supreme Court held that a defendant seeking to reverse an unfavorable ruling on a motion to suppress bears a heavy burden. The determination of whether a statement should be suppressed is made by the trial judge as the finder of fact. Id. In Balfour v. State, 598 So.2d 731, 742 (Miss.1992), the Mississippi Supreme Court held that “[d]e-termining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence.”
¶ 18. The record and the trial court’s detailed findings of fact and conclu *1083 sions of law reflect that Carr was read his Miranda warnings at the time he was arrested and again before being questioned. Carr also signed a waiver of rights on two different occasions after being asked to sign only if he understood. Both statements were tape recorded, and there was no indication that Carr’s statements were anything but voluntary. Accordingly, the trial court did not err in denying Carr’s motion to suppress the statements.

III. Whether the trial court erred in denying Carr’s motion to abolish peremptory challenges.

¶ 19. Carr asserts that the trial judge erred in denying his motion to abolish peremptory challenges. The Mississippi Supreme Court recently refused to depart from precedent and abolish peremptory challenges in Brawner v. State, 872 So.2d 1 (Miss.2004). See also Burton v. State, 875 So.2d 1120 (2004)(this Court followed Brawner and refused to abolish peremptory challenges). Therefore, we find that the trial court did not err.

IV. Whether the trial court erred in admitting exhibits 13, lk, 15, 16, 17, and 18 over Carr’s objection.

¶ 20. Carr contends that the trial court erred in overruling his motion to exclude exhibits 13 through 18. These exhibits consisted of photographs of the crime scene and the victim’s body. Carr argues that the photographs should be excluded because they were gruesome and lacked probative value. The trial court found that each of the photographs showed something different, which was of eviden-tiary value, and admitted them into evidence. In his ruling, the trial judge stated that he found the photographs to be more probative than prejudicial.
¶ 21. In Snow v. State, 800 So.2d 472, 491 (¶ 68) (Miss.2001), the Mississippi Supreme Court held that “[sjome probative value is the only requirement needed to buttress a trial judge’s decision to allow photographs into evidence.” Furthermore, the admissibility of such photographs rests within the sound discretion of the trial court and will not be overruled unless there was an abuse of discretion. Gray v. State, 728 So.2d 36, 57 (¶92) (Miss.1998). We find that the trial judge did not abuse his discretion, and therefore, did not err.

V. Whether the trial court erred in denying Carr’s proposed jury instruction D-Sl.

¶22. Carr asserts that the trial court erred in refusing to give proposed jury instruction D-Sl which defined mental retardation and stated that if the jury found Carr to be mentally retarded they could not give him the death penalty. Because Carr did not receive the death penalty, this issue is moot. Furthermore, the evidence presented did not support such an instruction. Therefore, the trial court did not err in refusing this instruction.

VI. Whether the trial court erred in denying Carr’s motion for judgment notwithstanding the verdict or in the alternative for a new trial.

¶23. Carr asserts that the proof was insufficient to establish that he possessed the requisite intent to commit the underlying felony of armed robbery because there was no direct evidence linking him to the crime. As such, Carr claims the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, a new trial.
¶24. Motions for judgment notwithstanding the verdict implicate the sufficiency of the evidence. Bullins v. State, 868 So.2d 1045, 1048 (¶12) (Miss.Ct.App.2004). Our standard of review on the question of the legal sufficiency of the *1084 evidence is clearly defined. In Manning v. State, 735 So.2d 323, 333 (¶ 10) (Miss.1999), the Mississippi Supreme Court held:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury’s verdict is quite limited. We proceed by considering all of the evidence — not just that supporting the case for the prosecution — in the light most consistent with the verdict. We give [the] prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
¶ 25. On a motion for a new trial, we look to determine whether the jury verdict is against the overwhelming weight of the evidence. Montana v. State, 822 So.2d 954, 967 (¶ 61) (Miss.2002). In doing so, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Id. at 967-68. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Id. at 968.
¶ 26. Our consideration begins with a review of the armed robbery statute, Mississippi Code Annotated Section 97-3-79 (Rev.2000), which provides that:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
¶ 27. Carr was charged and convicted of capital murder with the underlying felony of armed robbery. No direct evidence of a robbery, in the form of cash or property that was taken from the victim, was found in Carr’s possession. However, the armed robbery statute expressly provides that a person may be convicted of armed robbery for taking or attempting to take personal property of another under certain circumstances. Id. See also Miss.Code Ann. § 97-1-7 (Rev.2000) (“any overt act toward the commission of a crime, which fails to complete the offense, constitutes an attempt to commit the offense”).
¶28. The State presented sufficient evidence under both standards. There was adequate evidence for the jury to conclude that Carr hit Ms. King with a metal chair and stabbed her multiple times. Certainly, this evidence satisfies the violence element of the armed robbery statute.
¶ 29. Carr contends that there was no evidence to establish that he attempted to take money or property from the King residence. Had money or property belonging to Ms. King been found in Carr’s possession, his intent would have been known by direct evidence. However, simply because such direct evidence was not presented does not mean that there was no evidence that Carr attempted to take personal property from Ms. King. Indeed, Carr confessed that he went to the *1085 King residence to attempt to borrow money, and that when Ms. King refused, he attacked her. There was testimony by law enforcement officers that the King residence was in shambles and the contents of Ms. King’s purse had been dumped on her bed. Furthermore, Carr admitted that after he attacked Ms. King, he began searching the home for money.
¶ 30. The jury was to determine whether Carr possessed the required “intent to take.” Broomfield v. State, 878 So.2d 207 (2004). We find that it was reasonable for the jury to infer that Carr’s actions in the King residence were sufficient overt acts to support the underlying felony of armed robbery. Carr was present at the King residence for the sole purpose to obtain money. When Ms. King did not voluntarily give Carr the money he requested, Carr went into a rage and he killed her. Carr then searched her home and emptied Ms. King’s purse looking for money. From this evidence, the jury could reasonably infer that Carr formed the intent to take money from Ms. King immediately upon her refusal to loan Carr the ten dollars he requested. It was within the jury’s province to draw reasonable inferences from the evidence based on their experience and common sense. Lewis v. State, 573 So.2d 719, 723 (Miss.1990).
¶ 31. Considering the appropriate standards of review for judgments notwithstanding the verdict and for new trials, we find the evidence to be of such weight and sufficiency as to support the jury’s verdict that found Carr guilty of the underlying felony of armed robbery. Thus, we find that this assignment of error is without merit.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
KING, C.J., BRIDGES, P.J., LEE, MYERS AND CHANDLER, JJ„ CONCUR. IRVING AND BARNES, JJ., NOT PARTICIPATING.