981 So.2d 979 (2007)
James Wesley SCOTT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KP-00798-COA.
Court of Appeals of Mississippi.
June 12, 2007.
Rehearing Denied October 16, 2007.
*980 Jonathan M. Farris, James Wesley Scott, (Pro Se), attorneys for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
EN BANC.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. James Wesley Scott went to trial for simple robbery, attempted kidnapping, and attempted sexual assault. During jury selection, Scott objected to the prosecution's use of peremptory challenges. According to Scott, the prosecution exercised its peremptory challenges in a racially-motivated manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The circuit court found that Scott had failed to demonstrate a prima facie case of discrimination in the prosecution's use of peremptory challenges.
¶ 2. Ultimately, the jury found Scott guilty of the simple robbery charge and not guilty of the attempted kidnapping charge. As for the attempted sexual battery charge, the jury was not able to reach a verdict. Scott appealed to this Court and alleged that the circuit court erred when it overruled his Batson objection without conducting a Batson hearing. This Court remanded the matter to the Forrest County Circuit Court for a Batson hearing. At the conclusion of the hearing, the circuit court found that Scott failed to demonstrate a prima facie case of discrimination in the prosecution's use of peremptory challenges. As such, the circuit court found that it was unnecessary for the prosecution to submit race-neutral reasons for striking black members of the venire. Aggrieved, Scott asserts the following two issues:
I. WHETHER, UPON REMAND, THE CIRCUIT COURT PROPERLY OVERRULED SCOTT'S BATSON OBJECTION WITHOUT REQUIRING THE STATE TO PROVIDE RACE-NEUTRAL REASONS FOR USING TEN OF ITS PEREMPTORY CHALLENGES TO STRIKE AFRICAN-AMERICAN JURORS?
II. WHETHER THE CIRCUIT COURT ERRED IN DENYING SCOTT'S MOTION FOR JNOV AND/OR NEW TRIAL AND IN REFUSING TO GIVE HIS PEREMPTORY INSTRUCTIONS?
We find that the circuit court erred when it held that Scott did not demonstrate a prima facie case of racial discrimination in its exercise of peremptory challenges and that the prosecution was not required to provide race-neutral reasons for its peremptory challenges. As such, we need not consider Scott's second issue. Accordingly, we reverse and remand this matter for a new trial on the merits.

FACTS
¶ 3. Around 2:30 a.m. on December 3, 1999, Michelle Madden arrived at her apartment in Hattiesburg after spending a night out with friends. When Madden exited her vehicle, a car pulled up behind her and stopped. The driver asked Madden if she knew where apartment sixteen was located. As she gave the man directions to apartment sixteen, he exited his vehicle and grabbed Madden by the front of her pants. The man informed Madden that he was robbing her and that she was going to have to come with him so that he may do as he pleased with her. The man threatened to shoot and stab Madden if she did *981 not cooperate. When the man stuck his hand down the front of her pants, Madden was able to break away and run into the street. Occupants of a passing car, Kevin Thompson, Elizabeth Rubby, and Lauren Edgett, saw Madden running from the man and stopped to help her. The man then fled the scene, but not before Thompson, Rubby, and Edgett were able to record his license plate number. However, the attacker managed to get away with Madden's wallet and checkbook.
¶ 4. Thompson, Rubby, and Edgett immediately took Madden to the Hattiesburg Police Station, where Madden gave the police a detailed account of the robbery. Thompson, Rubby, and Edgett provided the police with the license plate number of the car driven by Madden's attacker. Later that same night, the vehicle driven by Madden's attacker was involved in an automobile accident. At the time of the accident, the vehicle at issue was being driven by Scott. Madden's checkbook was found in the car. Five days after the attack, Madden identified Scott as her attacker. That is, Madden picked Scott's picture out of a photo line-up. Madden also identified Scott at trial.

PROCEDURAL HISTORY
¶ 5. On April 5, 2000, a Forrest County Circuit Court grand jury returned a three-count indictment against James Wesley Scott for simple robbery, attempted kidnapping, and attempted sexual assault. Scott pled not guilty. Consequently, Scott went to trial on August 29, 2001. During jury selection, Scott objected to the prosecution's use of peremptory challenges. According to Scott, the prosecution exercised its peremptory challenges in a racially-motivated manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The circuit court disagreed. That is, the circuit court found that Scott had failed to demonstrate a prima facie case of discrimination in the prosecution's use of peremptory challenges.
¶ 6. Ultimately, the jury found Scott guilty of the simple robbery charge and not guilty of the attempted kidnapping charge. As for the attempted sexual battery charge, the jury was not able to reach a verdict. Post-trial, Scott filed a motion for JNOV or, alternatively, for a new trial. The circuit court overruled both motions. Scott appealed to this Court and alleged that the circuit court erred when it overruled his Batson objection without conducting a Batson hearing. Scott also appealed the circuit court's decision to overrule his motion for JNOV and/or new trial, as well as the circuit court's refusal to give his peremptory instructions.
¶ 7. On December 13, 2005, this Court issued an order and remanded this case to the Forrest County Circuit Court for a Batson hearing. Following the appointment of a special circuit judge, the matter was heard on August 15, 2006. At the conclusion of the hearing, the circuit court found that a prima facie case of a discriminatory pattern in the prosecution's use of peremptory challenges had not been established. Therefore, the circuit court found that it was unnecessary for the prosecution to submit race-neutral reasons for striking black members of the venire. Scott appeals.

STANDARD OF REVIEW
¶ 8. Great deference is given the circuit court when determining whether or not peremptory challenges were race-neutral. Manning v. State, 765 So.2d 516(¶ 8) (Miss.2000). "Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding and thus should be accorded appropriate *982 deference on appeal. . . . Indeed, we will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." Id.

ANALYSIS
I. WHETHER, UPON REMAND, THE CIRCUIT COURT PROPERLY OVERRULED SCOTT'S BATSON OBJECTION WITHOUT REQUIRING THE STATE TO PROVIDE RACE-NEUTRAL REASONS FOR USING TEN OF ITS PEREMPTORY CHALLENGES TO STRIKE AFRICAN-AMERICAN JURORS?
¶ 9. According to Scott, the prosecution used its peremptory challenges to eliminate black members of the venire panel in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Scott reasons that the circuit court erred in overruling his Batson objection and in not requiring race-neutral reasons from the prosecution. According to the State, the circuit court did not err when it did not require race-neutral reasons from the prosecution. We disagree.
¶ 10. In Batson, the United States Supreme Court addressed the issue of racial discrimination in the jury selection process. Under Batson, a defendant may establish a prima facie case of purposeful racial discrimination in the prosecution's use of peremptory challenges by showing: (1) that he is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and (3) that the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. Id. at 94, 106 S.Ct. 1712; see also Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987). In Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the United States Supreme Court rearticulated the proper procedure following a Batson objection as follows: (1) the defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race, (2) if the requisite showing has been made, the burden shifts to the prosecution to articulate race-neutral explanations for striking the jurors in question, and (3) the trial court has the duty of determining whether the defendant has carried his burden of proving purposeful discrimination. The process outlined in Hernandez has been adopted in Mississippi. See Thorson v. State, 721 So.2d 590(¶ 2) (Miss.1998); Walters v. State, 720 So.2d 856(¶ 28) (Miss.1998); Mack v. State, 650 So.2d 1289, 1296 (Miss.1994).
¶ 11. In Mississippi, a defendant must make a prima facie case by showing that the State engaged in a pattern of peremptory strikes based on race. Puckett v. State, 788 So.2d 752(¶ 10) (Miss. 2001). One indication that the State has engaged in purposeful discrimination is the exercise of every peremptory strike against members of a particular race. See Horne v. State, 819 So.2d 1186(¶ 3) (Miss. 2001). However, before the trial court is required to conduct a Batson hearing, it must first be shown that a prima facie case of purposeful discrimination exists. Robinson v. State, 761 So.2d 209(¶ 6) (Miss.2000).
¶ 12. In the case at bar, Scott, who is black, objected to the prosecution's use of ten peremptory strikes against black jurors. The prosecution used one peremptory strike against a white juror and refrained from using its available twelfth strike. The circuit court found that the prosecution had not used its peremptory *983 challenges in a discriminatory manner and interpreted Puckett to allow the circuit court to overrule a Batson objection without a hearing. Scott appealed to this Court, and the case was remanded for a Batson hearing.
¶ 13. The Batson hearing contained a meticulous review of the voir dire conducted on each individual juror and accompanying strike. However, both the prosecution and Scott were represented by new counsel as neither of the parties' original counsel were available for the Batson hearing. At the conclusion of the hearing, the circuit court determined that Scott had not met his burden of showing a prima facie case of racial discrimination. The special circuit judge articulated that the jury that ultimately tried Scott was comprised of three black jurors and nine white jurors. The special circuit judge also noted that the alternate was black.
¶ 14. At issue is whether Scott demonstrated a prima facie case of purposeful discrimination under Batson. First, the defendant must establish a prima facie case of purposeful discrimination in the selection of jury members. To demonstrate such a prima facie case, Scott had to show (1) that he is a member of a "cognizable racial group," (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and (3) that facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities. Berry v. State, 703 So.2d 269(¶ 94) (Miss.1997).
¶ 15. The record details actual jury selection from thirty-six specific people. While there were certainly more people on the venire, the record before us only allows us to review those people challenged or selected for the jury that convicted Scott. Not considering the five people the circuit court excused for cause, Scott and the prosecution selected the jury from the first thirty-six people on the venire panel. Of those thirty-six people, twenty-four were white and twelve were black. Said differently, one-third of the venire was black.
¶ 16. Scott and the prosecution chose the jury after three rounds of selections. Scott did not object to the prosecution's exercise of peremptory challenges until after the jury had been finally selected. The prosecution did not argue that Scott waived his objections to the first two rounds of peremptory challenges.[1] As such, the prosecution waived its potential waiver argument. Manning v. State, 735 So.2d 323 (¶ 21) (Miss. 1999).
¶ 17. During the first round of peremptory challenges, the prosecution used four challenges  three challenges against black members of the venire and one against a white member  and tendered a prospective jury made up of ten white people and two black people. Of those initial twelve, Scott accepted two black jurors and one white juror. However, Scott used peremptory challenges on the other nine members of the panel  all of which were white.[2] As *984 such, three members of the final jury had been selected and nine more needed to be selected, not including alternates.
¶ 18. During the second round of peremptory challenges, the prosecution exercised five of its remaining eight challenges. The prosecution accepted nine white veniremen and challenged all five black veniremen that appeared on that panel. That is, the prosecution accepted every white member of the panel and challenged every black member. Scott accepted three of those nine white veniremen and used his last three challenges on white jurors. As a result, three additional white jurors were on the jury. Consequently, nine of the final twelve people were on the jury. Seven were white and two were black.
¶ 19. Because three more people were needed to complete the jury, the prosecution considered five more members of the venire. Of those five, two were black and three were white. The prosecution used two of its remaining three peremptory challenges on the only two remaining black veniremen and accepted the three remaining white veniremen. That completed the jury. The final makeup of the jury was ten white jurors and two black jurors. As for the alternate, the circuit court allowed each side one challenge. The prosecution accepted the very next member of the venire. That person was black.[3] Scott did not exercise a challenge against that member of the venire.
¶ 20. To summarize, the prosecution accepted two black jurors and twenty-two white jurors. The prosecution used challenges on one white member of the venire and ten black members of the venire. Roughly 33% of the venire was black. The prosecution exercised ten of its eleven peremptory challenges against black members of the venire. Said differently, the prosecution used approximately 91% of its challenges against black veniremen. Those statistics alone raise an inference of discrimination. The prosecution accepted two black jurors and one black alternate. Even so, "[t]hat the prosecutor accepted other black persons as jurors is no defense to a Batson claim." Chisolm v. State, 529 So.2d 635, 637 (Miss.1988).
¶ 21. Dicta stated in the Mississippi Supreme Court's decision in Chisolm v. State, 529 So.2d 630 (Miss.1988) suggests that, here, the circuit court erred when it did not require the prosecution to state race-neutral reasoning for its exercise of 91% of its challenges against black members of the venire.[4] In Chisolm, the prosecution used twelve peremptory challenges. The prosecution used seven of those twelve challenges to exclude black jurors. Ultimately, the jury was comprised of ten white jurors and three black jurors. According to the supreme court, "Quite apparently, [the appellant in Chisolm] made a prima facie showing meeting *985 the Batson criteria." Id. at 632. If a prima facie showing was "quite apparent" where the prosecution used seven of twelve challenges against black veniremen and, as a result, the jury was comprised of ten white jurors and three black jurors, it is equally apparent where the prosecution uses ten of eleven peremptory challenges against black veniremen to end up with a jury of ten white jurors and three black jurors.
¶ 22. In a case the supreme court termed "Chisolm II," the prosecution used ten peremptory challenges  nine against black members of the venire. Chisolm v. State, 529 So.2d 635, 637 (Miss.1988). The final jury was comprised of eight white jurors, four black jurors, and one white alternate. Id. Though, like Chisolm I, the case hinged on the prosecution's reasoning for its peremptory challenges, the supreme court stated, "[a]s in Chisolm I, there can be no doubt that Chisolm made his prima facie showing of purposeful discrimination in the selection of the jury." Id. (emphasis added).
¶ 23. In Conerly v. State, 544 So.2d 1370 (Miss.1989), the supreme court again discussed the requirements of a prima facie demonstration of racial discrimination during peremptory challenges. In Conerly, there were forty-nine venire members during the defendant's trial. Id. at 1371. Of those forty-nine, nine people were black. Id. Two black jurors were excused for cause. Id. The prosecution accepted one black juror and used five peremptory challenges to exclude black members of the venire. Id. The jury was comprised of eleven white jurors and one black juror. Id. The supreme court held that, "the fact that the prosecution used all of the peremptory strikes necessary (five) to remove all but one black person from the jury satisfies the requirement of raising an inference of racial discrimination." Id. at 1372. While the prosecution in this case did not use all of its peremptory challenges against black jurors, it used the vast and overwhelming majority of its challenges against black members of the venire.
¶ 24. In Thorson, 653 So.2d at 896, the supreme court remanded for a Batson hearing after the trial court overruled the defendant's Batson objection. At trial, thirteen members of the venire were black. Id. at 895. The prosecution exercised seven peremptory challenges against black veniremen. Id. Ultimately, four members of the jury and two alternates were black. Id. The supreme court found that the prosecution should have been required to state its reasoning for exercising peremptory challenges against the seven black members of the venire panel. Id.
¶ 25. The supreme court also found a prima facie case of discrimination during peremptory challenges in Berry, 703 So.2d 269. In Berry, the prosecution struck every available black person from the venire except for the one left after it exhausted all of its peremptory challenges. Id. at (¶ 97). As a result, there were eleven white jurors and one black juror. The supreme court found that the jury composition "certainly creates an inference of purposeful discrimination." Id. True enough, the prosecution in this case did not use all of its peremptory challenges against black members of the venire  it used all but one peremptory challenge against black members of the venire.
¶ 26. Precedent dictates that the use of nine of eleven peremptory challenges suffices as a demonstration of a prima facie case of purposeful discrimination. In Manning v. State, 735 So.2d 323 (Miss. 1999), the supreme court again remanded for a Batson hearing. At trial, the prosecution stated its reasoning for its exercise of peremptory challenges, so it was moot *986 as to whether there was a prima facie case of discrimination. Manning, 735 So.2d at 339(¶ 28). Still, the supreme court stated that it would be easy to prove a prima facie case of discrimination "because the prosecutor used nine of its [sic] eleven peremptories to strike black members of the first venire." Id. Here, the prosecution used ten of its eleven peremptory challenges to strike black members of the venire.
¶ 27. We find that Scott demonstrated a prima facie case of discrimination and that the circuit court clearly erred when it did not require race-neutral explanations by the prosecution. If exercising ten of eleven peremptory challenges against black members of the venire does not suffice as a prima facie case of purposeful discrimination when one-third of the panel is black, then it is difficult to imagine what would. The only course of action more egregious would be the use of all peremptory challenges against a particular racial group.
¶ 28. During the Batson hearing on remand, the circuit court stated that, should we find that it erred when it found no pattern of discrimination, the appropriate measure would be to remand for a new trial, because apparently neither the prosecutors nor the defense attorneys from Scott's underlying trial were in their previous offices at the time of the Batson hearing and were otherwise unavailable to testify. As such, the circuit court opined that it would be exceedingly difficult to discover the prosecutor's reasoning for his use of peremptory challenges. Consequently, the circuit court was of the opinion that, should this Court find that the prosecution should have been required to offer race-neutral reasons for its use of peremptory challenges, this Court should order a new trial. We agree. Accordingly, we remand this matter for a new trial on the merits.
II. WHETHER THE CIRCUIT COURT ERRED IN DENYING SCOTT'S MOTION FOR JNOV AND/OR NEW TRIAL AND IN REFUSING TO GIVE HIS PEREMPTORY INSTRUCTION?
¶ 29. Based on our resolution of Scott's first issue, Scott's second issue becomes moot.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY MYERS, P.J.
CARLTON, J., Dissenting.
¶ 31. At trial, James Wesley Scott objected to the State's exercise of peremptory challenges per Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial judge found that Scott failed to demonstrate a prima facie case of discrimination in the prosecution's use of peremptory challenges. Later, as the majority notes, the Court of Appeals issued an order to remand the case to the Forrest County Circuit Court for a Batson hearing.
¶ 32. A special judge was appointed and later conducted the hearing. The special judge also found that a prima facie case of discrimination in the State's use of peremptory challenges had not been established. Therefore, the circuit court found *987 that it was unnecessary for the State to submit race-neutral reasons for striking black members of the venire. The third prong of the Batson analysis, of whether the defendant established a prima facie case, requires the defendant to show that facts and circumstances infer that the prosecutor used his peremptory challenges for striking minorities. Once the requisite showing has been made, the burden then shifts to the prosecution to articulate race-neutral explanations.
¶ 33. I respectfully submit that the majority opinion removes the discretion from the trial judge to conduct the analysis required under Batson, and particularly the third prong of a Batson objection analysis. The defendant in this case delayed his Batson objection until after the State had exercised its peremptory challenges and a jury was tendered.
¶ 34. The trial judge therefore had the unique benefit of smelling the smoke and seeing the fire of the entire jury selection process and not just a snapshot of any two, three or even just four strikes. The trial judge witnessed the entire battle. Although the State did not articulate reasons for striking the jurors, it is clear from the record that there were valid, race-neutral reasons for striking some of these jurors,[5] which the trial judge would have known.
¶ 35. Once a Batson objection is made, the burden is on the defendant to make a prima facie case of purposeful racial discrimination. This question is a determination of fact and the trial judge is given great discretion in evaluating whether the defendant has met this burden. Thorson v. State, 721 So.2d 590, 593(¶ 4) (Miss. 1998). We will reverse only where those findings are clearly erroneous and against the overwhelming weight of the evidence. Manning v. State, 765 So.2d 516, 519(¶ 8) (Miss.2000) (quoting Thorson, 721 So.2d at 593); Robinson v. State, 761 So.2d 209, 211(¶ 8) (Miss.2000) (citing Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987)). "This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies." Lockett, 517 So.2d at 1350.
¶ 36. In this case, the trial judge had the benefit of observing the entire selection process including the tendering of the panel by the State. Due to the defendant's delayed objection, the trial judge had the benefit of observing the totality of the exercise of the State's challenges prior to making this factual determination.
¶ 37. The majority opinion notes that the selection was from thirty-six people. Five were excused for cause and the jury was selected from the first thirty-six people. The final makeup of the jury was ten white and two black jurors and the alternate was black. Hence, three black jurors were selected.
¶ 38. I respectfully dissent because in my view the majority opinion fails to give deference to the two trial judges' determinations regarding whether the prima facie case had been established. The burden does not shift to articulate race-neutral reasons until such prima facie case had been established. This Court does not sit as a fact finder and must review findings of fact with great deference. Robinson, 761 So.2d at 211(¶ 8); Sudduth v. State, 562 So.2d 67, 71 (Miss.1990). "The mere fact that a jury is [predominately] white does not violate Batson; rather it is the *988 racially discriminatory exercise of peremptory challenges to strike black jurors from the jury that violates the Batson rule." Id. at 71. "The Batson decision specifically recognized that it would be impossible to apply a concept of proportional representation to the petit jury in view of the heterogeneous nature of our society." Id. (citing Batson, 476 U.S. at 85 n. 6, 106 S.Ct. 1712).
¶ 39. The circuit judge, and also the later appointed special judge, both factually found that the defendant failed to establish a prima facie case. Therefore, the burden did not shift to the State to articulate race-neutral reasons for the strikes.
¶ 40. I would affirm the factual finding of both judges, noting that the trial judge is in the best position to determine such factual issues and that the trial judge in this case had the unique opportunity to evaluate the selection process in its entirety due to the delayed defense Batson objection.
¶ 41. I respectfully submit that the majority opinion removes the discretion from the trial judge to determine if a prima facie case had been established per Batson based on the facts and circumstances of each case. It is not enough to reverse a trial judge on the premise that this Court may have made a different factual finding based upon the review of a cold, sterile record;[6] rather the question becomes whether the trial judge, or trial judges, in this case, abused their discretion in making a factual determination in light of the facts of this particular case.
¶ 42. If this Court wants to remove the discretion of the trial judge to determine whether the prima facie case has been established when an objection has been raised based on the striking of a cognizable racial group then the new standard should be clearly stated.
¶ 43. I would affirm the conviction and sentence based on the jury's verdict.
MYERS, P.J., JOINS THIS OPINION.
NOTES
[1] In criminal actions, "[j]uries shall be selected in the same manner, and peremptory challenges exercised in the same manner as provided in these rules for civil cases." URCCC. 10.01. "Constitutional challenges to the use of peremptory challenges shall be made at the time each panel is tendered." URCCC. 4.05(B). We note that the trial judge followed the correct procedure of requiring the prosecution to tender a full panel to the defense before the defense exercised its peremptory challenges. During the Batson hearing on remand, the special appointed judge did not. We observe that the correct procedure promotes earlier detection of any possible improper motive by the prosecution.
[2] The prosecution did not raise a reverse Batson objection. That Scott exercised all twelve of his peremptory challenges against white members of the venire does not insulate the prosecution.
[3] It is possible that one's failure to exercise a challenge could have been tactical and just as racially-motivated as an exercise of a challenge. For example, by declining to exercise a challenge, one could avoid members of the venire that appeared further down the list. The record indicates that juror 41 was the alternate. The record also indicates that juror 42 was white and juror 43 was black. The prosecution could have realized, that had it exercised a peremptory challenge on juror 41, Scott would have likely used his peremptory challenge on juror 42. As a result, juror 43, a black member of the venire, would then have served as the alternate.
[4] The supreme court resolved Chisolm on the basis of whether the prosecution's reasons for exercising peremptory challenges of black members of the venire were sufficiently race-neutral. Still, the supreme court briefly discussed the requirements of establishing a prima facie case within the context of Batson.
[5] Juror 12 knew people living in the apartment complex where the crime occurred. Juror 13 had pending criminal charges before the same judge and district attorney. Juror 24 knew Scott from work. Juror 36 had brain surgery and was disoriented which would have prevented him from serving on the jury. Juror 38 was a friend of Scott's family and had been involved in criminal activity in the county.
[6] "The demeanor of a potential juror would not be reflected in the record absent comment from counsel or the trial judge, which did not occur in this case." Manning, 765 So.2d at 520(¶ 11).