PRATHER, Chief Justice, for the Court:
¶ 1. This appeal arises from the Batson order entered by the Oktibbeha County Circuit Court on remand by this Court. Because the circuit court’s findings regarding the State’s articulated race-neutral reasons for its use of peremptory strikes in this case were not clearly erroneous or against the overwhelming weight of the evidence, we affirm the circuit court’s judgment overruling Willie Jerome Manning’s Batson objection in this case. Following the statutorily mandated review of Manning’s sentence, we further find that the death penalty was lawfully imposed in this case and therefore affirm Manning’s convictions and sentences.

STATEMENT OF THE FACTS

¶ 2. Willie Jerome Manning was convicted on July 24, 1996, of two counts of capital murder for killing Emmoline Jim-merson and Alberta Jordan during the commission of robbery. This Court found no error requiring reversal of Manning’s convictions on appeal, but remanded the case to the Oktibbeha County Circuit Court for a hearing to review the propriety of the State’s peremptory strikes against two jurors on the second venire under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Manning v. State, 735 So.2d 323, 352 (Miss.1999).
¶ 3. At the hearing, District Attorney Forrest Allgood articulated three reasons for the State’s strike against Juror 57, Jacqueline WrighL-Brewer, a black female. He perceived that Juror Wright-Brewer was hostile to the State, because she sat with her arms folded and glared at him during voir dire. District Attorney All-good also stated that he was concerned about her reluctance to serve on the jury because her small child would have to be in the care of others during the trial. Most importantly, District Attorney All-good said that he struck Juror Wright-Brewer based upon her response on her juror questionnaire indicating that she could not personally vote to impose the death penalty.
¶ 4. District Attorney Allgood also articulated reasons for striking Juror 59, Rena-ta M. Johnson, also a black female. He said that she had been represented by Manning’s trial attorney, Richard Burdine, in the past.[1] She knew members of Man *519 ning’s family, particularly his brother Draper Manning. Finally, Juror Johnson had participated in rallies and marches opposing Manning’s first two death penalties, affirmed by this Court in Manning v. State, 726 So.2d 1152 (Miss.1998).
¶ 5. Defense Attorney Clive Stafford Smith argued that the reasons articulated by the State were pretextual. Particularly, he maintained that the record did not support District Attorney Allgood’s assertions that Juror Wright-Brewer sat with her arms folded during voir dire or that Juror Johnson was represented in the past by Richard Burdine. Attorney Smith also pointed to the State’s failure to strike other jurors with small children and with similar and even stronger anti-death penalty views than Juror Wright-Brewer, who was rehabilitated during further individual voir dire.
¶ 6. Based upon the arguments presented at the hearing, Judge Montgomery issued an order on June 3, 1999, sustaining the State’s peremptory challenges and overruling Manning’s Batson objection. Judge Montgomery specifically found that there was no resulting prejudice from the State’s strikes on the second venire, because the challenges were made against potential alternates, and no alternates ever had to sit on the jury. He also found that the reasons offered by the State for striking Jurors Wright-Brewer and Johnson were valid race-neutral reasons and that the State therefore met its burden for sustaining the strikes and overruling Manning’s objection.
¶ 7. Manning now appeals to this Court from the circuit court’s Batson order. He does not challenge the circuit court’s findings regarding Juror Johnson, but argues that the State’s articulated reasons for striking Juror Wrighb-Brewer were purely pretextual. He also disagrees with the circuit court’s application of harmless error analysis in its Batson findings.

STATEMENT OF THE LAW

I.
THE COURT ERRED IN FINDING THE REASONS OFFERED BY THE DISTRICT ATTORNEY WERE RACE NEUTRAL WHEN IN REALITY THEY WERE PRETEXTS FOR PURPOSEFUL DISCRIMINATION.
¶8. In Thorson v. State, 721 So.2d 590 (Miss.1998), we outlined the appropriate standard of review on appeal from the circuit court’s findings under Bat-son:
We give great deference to the trial court’s findings of whether or not a peremptory challenge was race neutral.... Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding and thus should be accorded appropriate deference on appeal.... Indeed, we will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.
Thorson, 721 So.2d at 593 (internal citations omitted).
¶ 9. This Court has identified five indicia of pretext when analyzing proffered race-neutral reason for peremptory strikes under Batson: “(1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; ... (3) the characteristic cited is unrelated to the facts of the case;’’ (4) “lack of record support for the stated reason;” and (5) “group-based traits.” Mack v. State, 650 So.2d 1289, 1298 (Miss.1994) (citing Whitsey v. State, 796 S.W.2d 707, 707 (Tex.Crim.App.1989)).
¶ 10. Manning maintains that all three of the State’s proffered reasons for striking Juror Wrighb-Brewer were pre- *520 textual. First, Manning argues that there is no evidence in the record supporting the State’s allegation that Juror Wright-Brewer sat with her arms folded or glared at the district attorney during voir dire. Although lack of record support is one indication of pretext, Mack, swpra, as the State responds in its brief, the basis for the prosecutor’s strike need not be in the record. See Thorson, 721 So.2d at 597-98 (prosecutor acting in good faith may offer a race-neutral reason supplied to him by a third party).
¶ 11. In Conerly v. State, 544 So.2d 1370, 1371-73 (Miss.1989), cited by Manning, this Court ordered a new trial where the State’s only articulated reason for striking a juror was that she failed to complete the juror information form, and the trial judge found on the record that this was simply untrue. Conerly, 544 So.2d at 1371-73. The demeanor of a potential juror would not be reflected in the record absent comment from counsel or the trial judge, which did not occur in this case. As a result, unlike Conerly, the prosecutor’s proffered reason is neither supported nor disproved by the record. “[A] trial court’s determination of whether or not a reason is race-neutral largely depends on the credibility of the prosecutor.” Thorson, 721 So.2d at 597. We have previously accepted a juror’s demeanor as a valid race-neutral reason for a peremptory strike, Fleming v. State, 732 So.2d 172, 179 (Miss.1999), and therefore give deference to the trial judge’s acceptance of this race-neutral reason offered by District Attorney Allgood in this case.
¶ 12. Manning also takes issue with the State’s articulated reason for striking Juror Wrighb-Brewer based upon her juror questionnaire response that she could never vote to impose the death penalty. He points out that on individual voir dire, Juror Wrighb-Brewer indicated that she misunderstood the question and could vote for the death penalty in a proper case. The State admits that Juror Wrighb-Brewer was rehabilitated enough to withstand a challenge for cause. However, that does not preclude use of a peremptory strike based upon her juror questionnaire response. “[T]he prosecutor’s explanation need not rise to the level of justifying exercise of a challenge for cause.” Davis v. State, 660 So.2d 1228, 1242 (Miss.1995) (quoting Batson, 476 U.S. at 97, 106 S.Ct. 1712).
¶ 13. Manning also argues that striking Juror Wright-Brewer because of her juror questionnaire response and her reluctance to serve due to having a small child amounted to disparate treatment, as evidenced by the State’s failure to strike white jurors who expressed more concern for child care and who were objectively less favorable to the State. He points to Jurors Elizabeth Hutchins and Candace McGee, both white females whom the State opted not to strike. They both expressed concern over being away from their children during sequestration. Juror McGee also stated that she would require an eye witness before she could vote to impose the death penalty and said that she was concerned about coping with the gory details of the case and being swayed by sympathy.
¶ 14. Disparate treatment is strong evidence of discriminatory intent. Freeman v. State, 651 So.2d 576, 587 (Ala.Crim.App.1994); People v. Hall, 35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854, 858 (1983); Whitsey v. State, 796 S.W.2d 707, 714 (Tex.Crim.App.1989) However, disparate treatment is only one factor to be considered by the trial court; it is not necessarily dispositive of discriminatory treatment. State v. Floyd, 343 N.C. 101, 468 S.E.2d 46, 48-49 (1996). Where the State is able to articulate additional race-neutral reasons for striking the juror in question and uses peremptory strikes against jurors of another race based upon the same articulated reason, we have held that the theory of disparate treatment must fail. Manning, 735 So.2d at 340; Woodward v. State, 726 So.2d 524, 531 *521 (Miss.1997). In the instant case, the State articulated three race-neutral reasons for striking Juror Wrighb-Brewer and used peremptory strikes against two white jurors based upon their reluctance to impose the death penalty, as indicated on their juror questionnaires. We find that the circuit court’s ruling accepting the State’s articulated race-neutral reasons for striking Juror Wright-Brewer was neither clearly erroneous nor against the overwhelming weight of the evidence.
II.
THE TRIAL COURT ERRONEOUSLY APPLIED A HARMLESS ERROR ANALYSIS IN DETERMINING THAT THE STRUCK JURORS WERE ALTERNATES WHO NEVER MOVED TO SIT ON THE ACTUAL JURY.
¶ 15. In his ruling, Judge Montgomery found that because Jurors Wright-Brewer and Johnson were only potential alternate jurors, and the alternates never sat on the actual jury, no actual prejudice accrued to Manning due to the State’s strikes against them. Manning argues that the circuit court improperly applied a harmless error legal standard, contrary to United States Supreme Court case law. He points to language in Powers v. Ohio, 499 U.S. 400, 413, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in which the United States Supreme Court stated that “a criminal defendant suffers a real injury when the prosecutor excludes jurors at his or her own trial on account of race.” “This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant. ... Rather, it is because racial discrimination in the selection of jurors ‘casts doubt on the integrity of the judicial process,’ ... and places the fairness of a criminal proceeding in doubt.” Id. at 411, 111 S.Ct. 1364. The fact that a defendant will likely be convicted again on retrial does not negate the denial of his right to a fair trial due to the State’s racially discriminatory use of its peremptory strikes in violation of Batson. As a result, we agree with Manning that the harmless error standard has no place in the Batson analysis. Where the Batson hearing is conducted properly — at trial before any evidence is presented to the jury — this issue should not arise, because the trial court would not be able to predict whether an alternate would indeed be required to sit on the jury. However, in future cases where this Court remands for a Batson hearing, trial courts should not apply harmless error analysis.
III.
WHETHER THE IMPOSITION OF THE DEATH PENALTY IS DISPROPORTIONATE IN THIS CASE TO OTHER DEATH SENTENCES UPHELD BY THE COURT
¶ 16. Section 99-19-105(3) of the Mississippi Code requires this Court to review the sentencing in capital cases to determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury’s or judge’s finding of a statutory aggravating circumstance as enumerated in Section 99-19-101; [and]
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Miss.Code Ann. § 99-19-105 (Supp.1999). We considered and rejected Manning’s argument on direct appeal that each of the aggravating factors found by the jury in his case were improperly applied. Manning, 735 So.2d at 348-51.
¶ 17. We now examine the facts of this case to determine whether the death penalty was imposed in an arbitrary or disproportionate manner. This assessment requires a review of similar cases in which the death penalty was imposed and re *522 viewed by this Court since Jackson v. State, 337 So.2d 1242 (Miss.1976). Wiley v. State, 691 So.2d 959, 966 (Miss.1997). Manning stands convicted of murdering two elderly women by means of beating them unconscious with an iron and slashing their throats with a kitchen knife, while robbing them of approximately twelve dollars. A careful review of the death penalty cases listed in the appendix leads us to the conclusion that the death penalty was proportionately applied in this ease, and was not imposed under the influence of passion, prejudice or any other arbitrary factor. See, e.g., Brown v. State, 749 So.2d 82, 85 (Miss.1999) (convenience store clerk shot to death during robbery); McGilberry v. State, 741 So.2d 894, 902-03 (Miss.1999) (murder committed by beating victims with baseball bat during the commission of robbery); Jackson v. State, 684 So.2d 1213, 1217 (Miss.1996) (defendant convicted of stabbing deaths of four nieces and nephews while in search of money kept in safe); Chase v. State, 645 So.2d 829, 836-37 (Miss.1994) (defendant shot victim in the head during commission of robbery); Conner v. State, 632 So.2d 1239, 1243 (Miss.1993) (victim’s throat slashed during the commission of kidnaping and robbery), overruled on other grounds, Weatherspoon v. State, 732 So.2d 158, 161— 62 (Miss.1999).

CONCLUSION

¶ 18. Judge Montgomery erred in applying harmless error analysis in his consideration of the State’s use of peremptory strikes against potential alternate jurors in this case. However, because the circuit court’s finding that the State articulated sufficient race-neutral reasons for its use of peremptory strikes in this case was not clearly erroneous or against the overwhelming weight of the evidence, we affirm the circuit court’s judgment overruling Manning’s Batson objection. There being nothing in the record to suggest that Manning’s rights were violated or that he was deprived of a fair trial, we also affirm the jury’s verdict of guilty, and the subsequent sentence of death, and the judgment of the Oktibbeha County Circuit Court.
¶ 19. CONVICTION OF CAPITAL MURDER (TWO COUNTS) AND SENTENCE OF DEATH BY LETHAL INJECTION AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) (SUPP.1999) AND M.R.A.P. 41(a).
PITTMAN, P.J., McRAE, SMITH, MILLS, WALLER, COBB and DIAZ, JJ., concur.
BANKS, P.J., dissents with separate written opinion.

. The transcript from Manning’s original trial reveals that Juror Johnson's father, not Juror *519 Johnson herself, was represented by Richard Burdine.