¶ 1. Anthony Witherspoon was convicted of manslaughter. After Witherspoon's conviction was affirmed on direct appeal, he filed a motion under the Mississippi Uniform Post-Conviction Relief Act seeking a new trial on the ground of newly discovered evidence. The Pike County Circuit Court denied the motion. We reversed and remanded on the grounds that the lower court applied the wrong legal standard in denying Witherspoon's motion. See Witherspoon v.State, 96-KA-01370 (Miss. Ct. App. Oct. 13, 1998). On remand, the lower court applied the proper legal standard and, without holding an additional hearing, denied Witherspoon's motion.
¶ 2. Aggrieved, Witherspoon now appeals from this second denial of his post-conviction motion. He cites this issue for appellate review:
 Whether it was reversible error and abuse of discretion for the lower court to deny the motion for new trial based on newly discovered evidence.
Finding no reversible error, we affirm.
 ANALYSIS OF THE ISSUE PRESENTED
¶ 3. In his motion, Witherspoon alleged that Zenobia Isaac's testimony was newly *Page 1067 
discovered evidence. Isaac testified at the hearing held on the motion before the first appeal that Witherspoon did not shoot Trentiss Daniels. Isaac stated that Carlos Morgan picked up Witherspoon's gun and shot Daniels in the back as Daniels was chasing and shooting at Witherspoon.
¶ 4. Isaac's testimony directly refutes that of Carlos Morgan who testified that he saw Witherspoon shoot the victim at point-blank range. Isaac also testified that a witness retrieved the gun used by the victim, Daniels, and the gun dropped by Witherspoon which was allegedly used by Morgan, and took them to a nearby house. When the witness returned, according to Isaac, he only had one gun, the one used by Witherspoon. In addition to Morgan, two other witnesses testified during Witherspoon's trial that Witherspoon shot Daniels.
¶ 5. On remand, the lower court found that Witherspoon did not meet his burden of showing a reasonable probability that the newly discovered evidence, Zenobia Isaac's testimony, would have produced a different result had a new trial been granted. The trial court also found that Witherspoon did not meet his burden of establishing due diligence with respect to the new evidence, and lastly, that Witherspoon did not show that the State withheld or possessed any exculpatory evidence. We find that the trial court properly denied Witherspoon's post-conviction motion for new trial.
 I. Standard for granting new trial based on newly discovered evidence
¶ 6. In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence 1) will probably change the result if a new trial is granted, 2) has been discovered since the trial, 3) could not have been discovered before the trial by the exercise of due diligence, 4) is material to the issue, and 5) is not merely cumulative, or impeaching.Moore v. State, 508 So.2d 666, 668 (Miss. 1987). Mississippi case law requires that the proponent of the newly discovered evidence satisfy all of the prerequisites of the above stated rule before a reversal can be granted. See Black v. Stone County LumberCo., 216 Miss. 844, 850, 63 So.2d 405, 507 (1953), in which the Mississippi Supreme Court reversed the lower court's decision because it found that the proffered evidence had come to the knowledge of appellant and his attorney since the trial, that it was not owing to a want of diligence on their part, that it was neither cumulative nor corroborative, that it was material to the case and that it was wholly different from what had been shown at the trial.
¶ 7. Furthermore, the granting or denying of a new trial based on newly discovered evidence is within the discretion of the trial court, and we will not reverse a trial court's finding unless the trial court abused that discretion. Williams v. State,669 So.2d 44, 55 (Miss. 1996). The trial court must be satisfied that 1) the evidence came to defendant's knowledge since trial, 2) could not have been discovered sooner by due diligence, and 3) would probably produce a different result, if a new trial were granted.Id.
 II. Effect of the evidence
¶ 8. A dispute as to whether new evidence has a probative effect is to be determined primarily by the trial court in its discretion.See Moore v. State, 508 So.2d 666, 668 (1987). The lower court found that the newly discovered evidence would not likely produce a different result. We agree.
¶ 9. The trial court based it's decision on Isaac's lack of credibility. The trial court found that Isaac's version of the facts was "directly contradicted by all other eye witnesses, including the defendant's father, who stated in his testimony that as Witherspoon was running away he [Witherspoon] bumped into him [the father] and dropped the gun at his feet." The trial judge went on to say that "[i]t is hard to *Page 1068 
imagine how the father of the [defendant] could have missed something as obvious as a third party picking up the gun from his feet and shooting at his son with it. This testimony submitted by the defendant himself from his own father substantially discredits the purported testimony of Ms. Isaac." We agree with the trial judge. The most that can be said of Isaac's proposed testimony is that it would have created a conflict in the evidence.
¶ 10. At the hearing, Isaac testified that Trentiss fired his weapon first. That fact was not mentioned in Isaac's affidavit. Also, her in-court testimony, measured against her affidavit, reveals several other discrepancies. These discrepancies would have provided substantial cross-examination fodder on the question of Isaac's credibility. This is especially true since Isaac's version differed substantially in material particulars from all other persons who were, or claimed to be, eyewitnesses.
¶ 11. Furthermore, Isaac's statements were acquired after the trial, and it is certainly not unreasonable for the trial judge to have taken a skeptical view of Isaac's testimony in light of his knowledge that Isaac had been a witness in several trials in the county. In fact, she was viewed somewhat as a professional witness, somehow always seeming to be at the right place at the right time. Based on the record before us, we cannot say that the trial court abused its discretion in concluding that this newly discovered evidence would not likely have changed the result in this case.
¶ 12. Witherspoon argues that Isaac's testimony is substantive evidence that affirmatively supports his defense. He also argues that Isaac's testimony explains many unanswered questions. For example, he also argues that the autopsy report supports Isaac's testimony that there was no gun powder found on Trentiss's shirt which would have been present had he been shot at close range. Witherspoon also contends that Isaac's testimony answers questions regarding a missing gun. He points out that the police report indicated that 9 mm. shells were found on the site; however, they never found a 9 mm. gun.
¶ 13. Witherspoon directs our attention to Humphrey v. State,428 S.E.2d 362 (Ga. App. 1993). He contends this Georgia case supports his proposition. In Humphrey, the victim of a rape told a friend a version of the rape that differed in material respects from the testimony given at trial. The friend was not known to the defense prior to trial and came forth after Humphrey's conviction. Id. at 363. The appellate court granted a new trial because the testimony tended to support Humphrey's theory of the case. Id. at 365.
¶ 14. The case sub judice is easily distinguishable from Humphrey. It does not take much imagination to see how a different version as to how an alleged rape occurred, told by the victim herself to a friend who did not have credibility problems, would likely impact the jury's verdict if that version differed substantially from the one told at trial. In our case, Isaac's version of the facts, while potentially explaining some of the unanswered questions, does not rise to the stature of a rape victim giving contradictory versions of what occurred during an alleged rape.
¶ 15. Since we have concluded that the trial judge did not abuse his discretion in finding that the newly discovered evidence would not likely have produced a different result had it been presented to the jury during the trial, it is not necessary for us to discuss the remaining prongs of the test for granting a new trial on the basis of newly discovered evidence. We move to Witherspoon's last argument.
 III. Exculpatory information
¶ 16. Witherspoon argues that the State knew Isaac had stated she did not see Anthony shoot Trentiss Daniels in the back, and failed to notify Witherspoon of such information. Witherspoon also argues that the State knew of Isaac's whereabouts *Page 1069 
on the day of trial. Witherspoon, relying on Barnes v. State,460 So.2d 126, 133 (Miss. 1984), argues that exculpatory information must be produced. In its order following remand, the trial court stated:
 This Court has reviewed the pleadings, the transcript of the hearing and the applicable portions of the trial transcript and the factual findings of the Court is that there is no showing that Zenobia Isaac Magee ever told any police officer or any representative of the State, either at the time of the shooting or at any other time, that the victim was shot in the back by Carlos Morgan rather than Witherspoon. This version of the facts does not even corroborate the testimony of Witherspoon's father, who claims to be an eye witness. On the basis of the evidence, this Court specifically finds that the State had no "exculpatory evidence" in its possession that it withheld from the defense.
We find no abuse of discretion on the part of the trial judge in this finding. It is true that Isaac had told the authorities that she did not see Witherspoon shoot Daniels. However, there is a wide gulf between saying she did not see Witherspoon shoot Daniels and saying Witherspoon did not shoot Daniels or that Carlos Morgan shot Daniels. This issue lacks merit.
¶ 17. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT, DENYINGPOST-CONVICTION RELIEF, IS AFFIRMED. COSTS ARE ASSESSED TOAPPELLANT.
KING AND SOUTHWICK, P. JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE,AND THOMAS, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.