976 So.2d 889 (2007)
Lisa Hinton COUNCIL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00403-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied November 20, 2007.
*893 Jonathan M. Farris, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. Lisa Hinton Council was found guilty of murdering Darlene Latham by deliberate design and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. She now appeals her conviction on several grounds, *894 seeking a new trial. Finding no error, we affirm.

FACTS
¶ 2. In the early morning hours of July 27, 2002, Lisa Hinton Council returned to the home she shared with her boyfriend, Isaac Harris, after an evening of dancing and drinking at a nearby club. Council took a bath, and was dressing for bed when she heard Harris speaking to someone else, presumably at the door, saying "come in." Council then discovered Darlene Latham entering the home. Testimony at trial adduced that Council and Latham had prior altercations and arguments with each other in past years, usually stemming from Latham's previous relationship with Harris. Council testified to having told Latham to leave, but Latham refused. An argument ensued, and Council retreated to the bedroom to retrieve a knife kept in her purse. Latham followed Council to the bedroom and the argument continued. Council testified that she proceeded to "swing" the knife at Latham. Latham was stabbed six times and died as a result of the wounds. A few hours after Latham died, Council surrendered to the Hattiesburg Police Department, waived her rights and gave a complete statement confessing to stabbing and killing Latham.
¶ 3. On May 9, 2005, Council's two-day trial began. Sixty-six jurors were initially selected for the venire panel. Of these sixty-six jurors, forty-two were Caucasian and twenty-four were African-American. Voir dire ended after only forty-two of the initial sixty-six jurors were seated. Of the forty-two potential jurors interviewed, twelve were African-American. During jury selection, the State exercised ten of its allotted twelve peremptory challenges and one alternate peremptory challenge to strike African-Americans from the jury. One other African-American potential juror was excused for cause. Ultimately, the racial makeup of the jury that convicted Council, who is African-American, consisted entirely of Caucasian jury members. Council now appeals her conviction, seeking review of several issues, which we have recast for clarification.

DISCUSSION
I. WHETHER THE STATE'S EXERCISE OF PEREMPTORY CHALLENGES VIOLATED BATSON?
¶ 4. Council claims that the trial court erred in failing to find that she had made a prima facie showing of the State's purposeful racial discrimination in striking potential jurors from the panel. She argues that the court's error is evident in its allowing the State to use ten of its twelve available peremptory challenges and one alternate challenge to strike African-American potential jurors, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), from the jury panel. However, in her brief to this Court, Council only takes issue with the State's striking of nine of the potential jurors. Council further argues that the trial court committed reversible error in failing to require the State to proffer race-neutral reasons for all peremptory strikes exercised against African-American potential jurors and in failing to make an on-the-record factual determination whether each reason proffered by the State was, in fact, race-neutral. She asserts that the failure of the trial court to require the prosecutor to provide race-neutral reasons for the exercise of peremptory challenges entitles her to a new trial.
¶ 5. We are to give great deference to the trial court's determination under Batson and will not reverse a trial court's determination unless the record indicates that the trial court's decision was *895 against the overwhelming weight of the evidence or clearly erroneous. Berry v. State, 802 So.2d 1033, 1037(¶ 9) (Miss. 2001). In order to state a prima facie case of purposeful discrimination under Batson, the objecting party must show to the trial judge (1) that he or she is a member of a recognized racial group; (2) that the prosecution utilized peremptory challenges to strike members of the defendant's racial group from the jury panel; (3) and that the facts surrounding the use of the peremptory challenge infer a discriminatory purpose on part of the prosecutor. Snow v. State, 800 So.2d 472, 478(¶ 10) (Miss. 2001). If the challenging party makes its prima facie case before the trial court, then the party exercising the peremptory challenge has the burden to articulate a race-neutral explanation for excluding that potential juror. McFarland v. State, 707 So.2d 166, 171(¶ 14) (Miss.1998). Once a race-neutral reason has been given by the party exercising the peremptory challenge, the opponent can then attempt to rebut the given explanation. Flowers v. State, 947 So.2d 910(¶ 9) (Miss.2007) (holding that the "burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination.") Our supreme court "has recognized five indicia of pretext that are relevant when analyzing the race-neutral reasons offered by the proponent of a peremptory strike," specifically:
(1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited . . . (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.
Id. (citing Manning v. State, 765 So.2d 516, 519(¶ 9) (Miss.2000) (citations omitted)). The trial judge then must determine whether the objecting party has met its burden to prove that there was purposeful racial discrimination in utilizing the peremptory strikes. Id.
¶ 6. Here, the trial judge found that no prima facie case of purposeful racial discrimination had been established. Nevertheless, the State voluntarily provided race-neutral reasons for striking several of the potential veniremen for the purpose of developing the record.[1] As an appellate court, we are to review whether the trial judge erred in declining to find that a prima facie case had been made by Council.
¶ 7. We begin our discussion of whether the trial court erred in dismissing the Batson challenges by addressing a fundamental problem with several of Council's points of issue. Council challenges the exclusion of nine jurors from the panel in her appeal today. However, several of Council's Batson challenges that are appealed to us today were not objected to during voir dire. Our review of the record finds that Council made a Batson challenge at two different times during voir dire. These Batson objections during voir dire only challenged the State's exclusion of Jurors No. 2, No. 7, No. 8, No. 13, No. 15, No. 20 and No. 32 from the panel. *896 Only the exclusion of Jurors No. 2, No. 7, No. 20 and No. 32 initially challenged under Batson is appealed to us today. When there has not been an objection to the removal of jury members at trial, an appellate court does not have the authority to consider the issue, as it is procedurally barred on appeal. Flowers v. State, 947 So.2d at (¶ 8); Spicer v. State, 921 So.2d 292, 320(¶ 62) (Miss.2006) (holding that challenges for cause must be objected to at the trial level before an appellate court can review); Stephens v. Kemco Foods, Inc., 928 So.2d 226, 232(¶ 11) (Miss.Ct.App.2006) (citing Mack v. State, 650 So.2d 1289, 1297 (Miss.1994) (holding that the objecting party must challenge the proffered race-neutral reason as pretextual at the trial court level or the challenge is waived on appeal)). Thus, we find the challenges to the exclusion of Jurors No. 21, No. 23, No. 25, No. 28, and No. 40 made by Council for the first time on appeal are procedurally barred. Although the procedural bar alone is dispositive on the issue, we, nonetheless, address the merits of each of the arguments concerning the stricken jurors individually in our discussion of whether the trial court erred in accepting the prosecutor's reasons as race-neutral under Batson.
A. Juror No. 2
¶ 8. During voir dire, the prosecution struck Juror No. 2 by exercise of a peremptory challenge and Council lodged a Batson challenge. Upon objection from defense counsel, the prosecutor voluntarily provided his race-neutral reason to strike the juror based on his family friendship with a member of the defense counsel and stated that he believed the juror attended the same church as the defense attorney. Following the State's volunteering of race-neutral reasons, the trial judge held that a prima facie case of purposeful discrimination had not been made by Council, made a finding that the reasons provided by the prosecution were race-neutral, and overruled the defense's objection. Council argues, for the first time on appeal, that the reasons given by the State for striking Juror No. 2 from the panel were pretextual as they were based on disparate treatment and unsupported by the record.
¶ 9. Council alleges disparate treatment by stating that Jurors No. 22 and No. 27 had the same characteristics as Juror No. 2, but that the prosecution struck Juror No. 2, who is African-American; and declined to strike either Juror No. 22 or No. 27, who are Caucasian. Disparate treatment during the jury selection process has been defined as "the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge." Manning, 765 So.2d at (¶ 9). Our review of the record finds that Council's argument regarding disparate treatment to be flawed.
¶ 10. The voir dire transcript reveals that Juror No. 2 indicated that a member of the defense counsel was a friend of his family. This reason was voluntarily provided by the State in proffering a race-neutral reason for striking the juror. In comparison, Juror No. 22 indicated during voir dire nothing more than the fact that he "was aware of the attorneys" through his work with the youth court system. The fact that a potential juror knows one of the attorneys involved in the case is entirely different than a situation where a potential juror has a family friendship with a particular defense attorney. The supreme court has held that a friendship or having the acquaintance of a member of the defense team is an acceptable race-neutral reason to strike a venireman. Gaskin v. State, 873 So.2d 965, 970-71(¶ 17) (Miss.2004).
*897 ¶ 11. The characteristics of Juror No. 2 and Juror No. 27 are furthermore distinguishable. While Juror No. 2 admitted a family friendship with a member of the defense counsel, Juror No. 27 explained during voir dire that a witness expected to testify was one of his former high school teachers. While the record is devoid of the number of years that had passed between the time Juror No. 27 attended high school and was taught by the potential witness and the time period of the trial, the record does reflect that Juror No. 27 was a practicing attorney. Thus, we can at least estimate that there had been a significant lapse of time between the time period that Juror No. 27 was associated with the potential witness who was his former high school teacher. When evaluating the connections between the jurors for the potential of prejudice, it seems obvious that the relationship of a current family friendship far outweighs a former student-teacher relationship. We cannot find that the state's failure to object to Jurors No. 22 and No. 27, as opposed to its challenge of Juror No. 2 is an example of disparate treatment.
¶ 12. Lastly, Council argues that the State's assertion that Juror No. 2 attended church with a member of the defense counsel is unsupported by the record. Upon our review of the record, we agree that the prosecution's assertion that Juror No. 2 attended church with a member of defense counsel is not supported by the voir dire transcript. However, as we find that the exercise of a peremptory challenge against Juror No. 2 based upon the family friendship with the defense counsel, was not in violation of Batson, this error, alone, is harmless.
B. Juror No. 7
¶ 13. Juror No. 7 was struck from the panel by the State and the defense objected. The prosecution defended the use of the peremptory strike voluntarily, without the prompt of the trial court, and provided that its race-neutral reason for striking Juror No. 7 was based on the juror's coming forward and indicating to the court that she did not want to serve on the jury. At the time of the objection, the State had struck five jurors, four of whom were African-American. The trial judge held that a prima facie case had not been established at the time of the objection and found that the reason given by the State for its exercise of the challenge was sufficiently race-neutral. As to the merits of the prosecution's volunteered race-neutral reason, we note that our supreme court has spoken to the issue of striking a juror based upon his or her not wanting to serve. "A juror's reluctance to serve or preoccupation with matters outside the courtroom is a valid race-neutral reason for purposes of Batson." Manning, 765 So.2d at (¶ 31). We cannot find error in this trial court ruling.
C. Juror No. 20
¶ 14. The defense specifically objected to the striking of Juror No. 20 and asked the court to require the prosecution to provide a race-neutral reason for the use of the challenge. The State responded by pointing out that Juror No. 20 indicated during voir dire that her cousin had been convicted of murder. The trial court found the family member's conviction to be a sufficient race-neutral reason and overruled Council's argument. Our review of the record also provides that Juror No. 20 told the court that her cousin's conviction of murder had impacted her greatly. Additionally, the juror provided that a family member was serving in law enforcement in the Hattiesburg Police Department and she indicated that this fact would make her give more weight and credibility to law enforcement witnesses than other witnesses. *898 Each of these reasons have been found to be race-neutral reasons. See Flowers, 947 So.2d at (¶ 89); Mhoon v. State, 464 So.2d 77, 80 (Miss.1985). Thus, we find no error in the ruling of the trial court.
D. Juror No. 21
¶ 15. The State struck Juror No. 21 and volunteered, without the direction of the trial judge, the race-neutral reason that Juror No. 21, at the time of voir dire, had an active warrant outstanding for her arrest and the prosecutor suspected her of being asleep. Council rebutted this proffered reason, arguing that she was unaware of any sleeping. However, the trial judge accepted the prosecutor's race-neutral reasons. For the first time, on appeal, Council now argues that the prosecution never produced a copy of the outstanding arrest warrant and asserts that the trial court erred in failing to require further questioning regarding the warrant.
¶ 16. Our supreme court has addressed the issue of relying on outside sources for the basis of peremptory strikes. The court stated,
[w]hile we do not hold today that our trial judges should conduct a `mini-hearing' within a Batson hearing each time a peremptory challenge is exercised based on information gained from outside sources, we do depend on the trial courts to exercise caution to ensure that peremptory challenges based on information from outside sources is credible and supported by on-the-record factual findings to this effect and that a complete record is made on this issue. If in doubt about the validity of outside information, the trial court should do what is necessary to ensure the proposed reasons are non-pretextual.
Brawner, 872 So.2d at (¶ 31). While the trial court did not question the source of the outside information regarding an outstanding warrant for Juror No. 21, we cannot say that this decision was error. The State was not required to question Juror No. 21 regarding the outstanding arrest warrant. "[A] prosecutor does not have to question a juror in open court about such information [he has about that juror] before using it as a racially neutral ground to make a peremptory strike, as long as the source of the information and the practice itself are not racially discriminatory." Snow, 800 So.2d at (¶ 26).
¶ 17. A juror's criminal history, as well as the existence of a valid outstanding arrest warrant for the juror, are race-neutral reasons to strike a juror. Flowers, 947 So.2d at (¶ 26). The State was not required to question Juror No. 21 about the outstanding arrest warrant before exercising a peremptory strike against her, nor was a mini-hearing required to substantiate the existence of an outstanding arrest warrant.
E. Juror No. 23
¶ 18. The Appellant lodged no Batson objection to the striking of Juror No. 23 at trial, thus she is procedurally barred from having the issue decided here. However, we note that Juror No. 23 relayed to the trial court during voir dire that one of the defense attorneys was formerly his sister-in-law, that his brother was a murder victim, and that he thought it was better if a criminal defendant testified on her own behalf rather than not. Setting aside the juror's close family relationship with one of the attorneys, and the fact he had been impacted by a violent crime, it is clear that Juror No. 23 had already formed an opinion about the case, which was a valid race-neutral reason to strike him from the jury. Flowers, 947 So.2d at (¶ 58).
*899 F. Juror No. 25
¶ 19. No objection was made to the striking of Juror No. 25 at trial, but we proceed with discussion on the merits of the challenge. Juror No. 25 informed the court that a member of the defense counsel was her sorority sister, that she knew one of the potential witnesses and that she was friends with a potential witness. The juror's relationship with the defense attorney, alone, was sufficient as an acceptable race-neutral reason to strike. Gaskin, 873 So.2d at 970. Thus, the exercise of a peremptory strike against Juror No. 25 would not have been in violation of Batson.
G. Juror No. 28
¶ 20. The striking of Juror No. 28 was not objected to by Council until her appeal. However, we address the merits of the peremptory striking in noting that Juror No. 28 divulged during voir dire that one of the potential witnesses was her friend's mother. This personal relationship with the potential juror's family member provides an adequate race-neutral reason for striking Juror No. 28. Thus, this reason would have provided a sufficient race-neutral reason.
H. Juror No. 32
¶ 21. Council objected to the State's striking of Juror No. 32, asserting a violation of Batson during voir dire. When the State was prompted by the trial judge to proffer a race-neutral reason, the prosecutor stated he struck Juror No. 32 from the jury for failing to make eye contact, for appearing to be asleep or bored, and for failing to listen during voir dire. Defense counsel rebutted the prosecutor by stating "I didn't see any of that," but the trial court ultimately found that the prosecutor's proffered reasons were race-neutral. "Inattentiveness, demeanor, sleeping during voir dire, [and] lack of eye contact . . . have all been held by [the supreme court] to be race-neutral reasons in keeping with Batson." Burnett v. Fulton, 854 So.2d 1010, 1014(¶ 10) (Miss.2003). We find no error in the trial court's overruling Council's objection.
I. Juror No. 40
¶ 22. While Juror No. 40 was being questioned, he indicated that he believed that one must retreat as their first option before defending him or herself. As the case against Council involved a defense of self-defense, this answer made clear that Juror No. 40 had already formulated an opinion and had personal beliefs about an important aspect of the case. The fact that a juror has already formed an opinion about the case is a valid race-neutral reason to strike them from the jury. Flowers, 947 So.2d at (¶ 58). In declining to find a Batson violation, the trial court did not find that the circumstances surrounding the State's exercise of its peremptory challenges indicated purposeful discrimination. Our review of the record finds no error on the part of the trial judge.
II. WHETHER THE TRIAL COURT ERRED IN DENYING COUNCIL'S MOTIONS FOR MISTRIAL AND FOR A NEW TRIAL DUE TO THE INTRODUCTION OF INFORMATION NOT DISCLOSED TO THE DEFENSE DURING DISCOVERY?
¶ 23. Council claims that the trial court erred in denying her motion for mistrial, specifically because a new trial was warranted due to two instances she describes as discovery violations. The State argues that Council's failure to request a continuance is fatal to her discovery claim on appeal and cites for its proposition the holding of McGowen v. State, 859 So.2d 320 (Miss.2003). We are to review *900 a trial court's denial of a motion for mistrial for abuse of discretion. Irby v. Travis, 935 So.2d 884, 908(¶ 68) (Miss. 2006). "The failure of a trial court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion." Id.
¶ 24. The first objection was made by Council while Council's boyfriend, Harris, was being cross-examined. Harris was asked whether he invited Latham to the house on the evening in question and he responded "No, I didn't. I hadn't seen her." At this time in the trial, a note from the gallery was passed to the prosecution's table containing information indicating that Harris was spotted driving Latham around in his vehicle the day before she was killed in his home. With this knowledge, the State, on redirect, asked Harris again whether he had contact with Latham the day before she was killed. Harris responded that he could not remember. Then, Harris was questioned regarding his being with Latham the day before her death. At this point in the testimony, the defense objected to the questioning on redirect, arguing that the information regarding the recent contacts between Harris and Latham was not produced during discovery. The trial judge called for recess and the defense was able to question the source of the new information. Council did not ask for a continuance.
¶ 25. The second instance that Council characterizes as a discovery violation occurred during the testimony of the defense's character witness, Vermester Bester. Bester testified to her church's counseling of Council during the months pending trial, while she was released from custody on bond. On cross-examination, the State inquired of Bester whether she had heard of Council stabbing her boyfriend seven months prior, while Council was awaiting her trial. The defense objected to this line of questioning, stating that this information was not produced during discovery. Again, the defense did not request a continuance from the trial court.
¶ 26. The Supreme Court held in McGowen that there are certain procedural steps trial courts must follow when faced with new or undisclosed information arising during trial that was not obtained in discovery. The court stated:
1. Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc. 2. If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue. 3. If the defendant does request a continuance the State may choose to proceed with trial and forego [sic] using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
McGowen, 859 So.2d at (¶ 57) (emphasis added). In accordance with the precedent of McGowen, we find that because Council did not request a continuance, this issue is waived.
III. WHETHER THE TRIAL COURT ERRED IN ALLOWING IMPERMISSIBLE HEARSAY TESTIMONY?
¶ 27. Council characterizes the admittance of portions of testimony provided by two witnesses at trial as impermissible hearsay. The admissibility of testimonial evidence is left to the sound discretion of the trial court within the boundaries of the Mississippi Rules of Evidence, and it *901 will not be found in error unless the trial court has abused its discretion. Harris v. State, 861 So.2d 1003, 1018(¶ 41) (Miss. 2003). "Such error will warrant reversal only when the abuse of discretion has resulted in prejudice to the accused." Id.
¶ 28. The substance of the testimony that Council argues should not have been allowed consists of descriptions from two witnesses who overheard the ensuing argument between Council and Latham immediately before Latham was stabbed. This testimony qualifies as an exception to the hearsay rule as a statement of a then-existing mental condition, or state of mind under Mississippi Rule of Evidence 803(3). "Mississippi Rule of Evidence 803(3) encompasses relevant statements made by murder victims before their death." Id. at (¶ 42). The statements the witnesses overheard Council make to Latham and Latham make to Council just before the fight began are relevant to show that Council intended to fight and might have been the initial aggressor. We cannot find error in the trial court's admission of this testimony.
IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF COUNCIL'S PRIOR BAD ACTS AND PRIOR CONVICTIONS?
¶ 29. Council argues that it was reversible error for the trial court to allow the introduction of her prior bad acts and former convictions in violation of the Mississippi Rules of Evidence. She argues that the trial judge failed to make a finding on the record that the admittance of her prior bad acts and former convictions was more probative than prejudicial, and thus she is entitled to a new trial. The State argues that when Council took the stand on her own behalf, seeking to establish justifiable homicide, she "opened herself up" to cross-examination regarding specific instances of prior bad acts and prior convictions when she stated on direct examination, "that's not me. That's not me to fight. I never bothered nobody. I never bothered her and started trouble with nobody." The State cross-examined Council as to the veracity of assertions of her peaceful character and Council replied, "Well, most of the time when things like that happen, somebody always confronted me." The State then proceeded to question Council regarding a previous assault charge, a 2000 conviction for interfering with a police officer, a 1998 conviction of domestic abuse against a boyfriend, a 1998 vandalism conviction, a 1998 simple assault conviction, a 1999 child abandonment conviction, a 1994 conviction for failure to comply with a police officer, a 2003 escape conviction, and pending child abuse charges. During redirect examination, Council's attorney further questioned her regarding the 1998 conviction of domestic abuse. Council explained this instance by stating that she struck her boyfriend in the head with a flat-head screwdriver.
¶ 30. The admissibility of evidence and the finding of its relevancy is within the discretion of the trial court. Reynolds v. State, 784 So.2d 929, 932(¶ 7) (Miss.2001). Absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. Id. We give a high degree of deference to a trial court on its decision to admit or exclude evidence as long as the decision is made pursuant to the Mississippi Rules of Evidence. Hodges v. State, 912 So.2d 730, 780 (¶ 118) (Miss.2005). Additionally, "the admission or exclusion of evidence must result in prejudice and harm, if a cause is to be reversed on that account." Jackson v. State, 594 So.2d 20, 25 (Miss.1992).
¶ 31. Generally, evidence of prior offenses or prior bad acts committed *902 by a defendant, not resulting in conviction, is inadmissible for impeachment purposes. M.R.E. 404(a). However, there are exceptions to this rule. Mississippi Rule of Evidence 404(a)(1) excepts from the general rule barring the admittance of hearsay testimony "evidence of a pertinent trait of [the accused's] character offered by an accused, or by the prosecution to rebut the same." A criminal defendant is entitled to offer his good character as evidence of the improbability that he committed the act charged. However, once a defendant takes the stand in order to profess his good character, he or she opens the door, and the prosecution is allowed to respond to the defendant's assertions of good character by impeaching him or her. Morgan v. State, 741 So.2d 246, 254(¶ 22) (Miss. 1999). "When the accused raises the issue of his character, the prosecution may then offer evidence of the accused's bad character." Id. "A defendant's character is put in issue when he states that he has a good character or a good record, or when he otherwise offers evidence of good character." Id. (citing Rowe v. State, 562 So.2d 121, 123 (Miss.1990) (citing 1 Wharton's Criminal Evidence § 169 (1985))). Our supreme court has held that "[w]here an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination, and this is so though it would bring out that the accused may have committed another crime." Stewart v. State, 596 So.2d 851, 853 (Miss.1992).
¶ 32. Council, by testifying that she "never fought" or "bothered nobody," put at issue her self-acclaimed trait of peacefulness. Once Council testified regarding her trait of peacefulness with others, she then opened the door for the prosecutor to question her regarding other instances in which she was either charged or convicted of crimes against others. Although cross-examination of Council brought to light her previous crimes, the prosecutor's questioning of Council during cross-examination regarding her convictions of interfering with a police officer, domestic abuse, vandalism, simple assault, failure to comply with police officer, and child abandonment and the pending charges for child abuse were within the realm of allowable questions so as to rebut her testimony regarding her character for peacefulness with others. We do not find that the trial court erred in allowing the prosecutor to question Council during cross-examination about these prior convictions and bad acts.
¶ 33. As to the issue of whether the State improperly introduced Council's 2003 escape conviction, we find no sufficient basis for the trial court to have allowed the State to question Council about this prior conviction. However, we find that the trial court's decision on this matter was harmless error that did not result in prejudice or harm to Council so as to necessitate a reversal. "An error is harmless only when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." Bishop v. State, 761 So.2d 894, 898(¶ 12) (Miss.Ct.App.2000). There was plenty of other evidence before the jury, specifically the testimony of the witnesses and the defendant, herself, to support its finding of guilt.
V. WHETHER THE TRIAL COURT ERRED IN DENYING COUNCIL'S MOTION FOR DIRECTED VERDICT, PEREMPTORY INSTRUCTIONS, MOTION FOR JNOV, AND THE ALTERNATIVE MOTION FOR NEW TRIAL?
A. Motions For Directed Verdict, Peremptory Instructions, and JNOV
¶ 34. Council asserts that the State provided insufficient evidence to convict her of *903 murder and takes issue with the trial court for its denial of her motion for a directed verdict, for its passing upon her request for a peremptory instruction that would have asked the jury to return a verdict of not guilty, and for its denial of her motion for a judgment notwithstanding the verdict. In our review of the trial court's decision, we consider the evidence before the court when the last objection was made. McClain, 625 So.2d at 778. The last challenge cited on appeal was made with Council's request for her motion for JNOV.
¶ 35. A trial court's denial of a motion for directed verdict, denial of a request for a peremptory instruction, and denial of a motion for a judgment notwithstanding the verdict all challenge the legal sufficiency of the evidence presented. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the non-movant, consider only the evidence that supports the verdict and give the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. If the evidence was sufficient to establish guilt beyond a reasonable doubt and support a guilty verdict, the denial of the motions for a directed verdict, for a JNOV and for peremptory instructions is to be affirmed. Shelton v. State, 853 So.2d 1171, 1186(¶ 48) (Miss.2003); Jefferson v. State, 818 So.2d 1099, 1111(¶ 30) (Miss.2002); McClain, 625 So.2d at 778; Brown v. State, 556 So.2d 338, 340 (Miss.1990).
¶ 36. To convict Council of the murder of Latham by deliberate design, the State had to prove beyond a reasonable doubt that (1) she killed Latham (2) without the authority of law (3) with deliberate design to effect the death of Latham or someone else. Miss.Code Ann. § 97-3-19(1)(a) (Rev.2006). At trial, several witnesses testified for the State, including Isaac Harris, Dr. Steven Hayne, Margo Polk, Martha Simmons and Detective Gerald Bordelon. Additionally, Council testified on her own behalf. Polk and Simmons testified to having heard the ensuing argument between Council and Latham moments prior to witnessing Latham fall to the ground, bleeding. Council, herself, testified to having stabbed Latham and admitted that Latham had not yet struck her or brandished a weapon when the stabbing occurred. Harris' testimony also indicated that Latham was unarmed when Council stabbed her. Dr. Hayne testified regarding Latham's autopsy and described the depth and number of Latham's stab wounds. Detective Borderlon testified regarding his arrival on the scene of the murder and the following investigation into Latham's death.
¶ 37. Following our standard of review, viewing the evidence presented at trial in the light most favorable to the State and giving consideration of all reasonable inferences the jury may have drawn from this evidence, we find the evidence before the jury was sufficient to support a guilty verdict. Therefore, we affirm the lower court's denial of Council's motion for directed verdict, request for a peremptory instruction, and motion for a judgment notwithstanding the verdict.
B. Motion For New Trial
¶ 38. Council moved the lower court to grant her a new trial in the alternative, but her motion was denied. She appeals this denial of her motion for new trial, arguing the lower court erred because the verdict was contrary to the overwhelming weight of the evidence before the jury to convict her of murder by deliberate design. Council argued to the lower court that new and material evidence had developed since the trial and that this information was not reasonably discoverable until her motion. *904 Council further argued that discovery violations, the introduction of other crimes, the admittance of hearsay testimony, and Batson violations occurring during the trial warranted the granting of a new trial. The trial court dismissed Council's argument, finding that these issues had already been ruled upon by the court during trial.
¶ 39. We review a trial court's denial of a motion for new trial for abuse of discretion. Howell v. State, 860 So.2d 704, 764 (¶ 211) (Miss.2003). We view the evidence in the light most favorable to the verdict and will only grant a new trial in exceptional cases where the evidence preponderates heavily against the verdict. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The verdict will stand unless an unconstitutional injustice would result. Id.
In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence (1) will probably change the result if a new trial is granted, (2) has been discovered since the trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material to the issue, and (5) is not merely cumulative, or impeaching.
Witherspoon v. State, 767 So.2d 1065, 1067(¶ 6) (Miss.Ct.App.2000). "[T]he proponent of the newly discovered evidence [must] satisfy all of the prerequisites of the above stated rule before a reversal can be granted." Id. Council simply asserted to the lower court that there existed newly discovered evidence, but failed to provide any substance or introduce any of the evidence. Council provides us with no information regarding the newly found evidence warranting a new trial and we have previously addressed Council's other issues. We agree with the lower court that a new trial was not warranted in this case and affirm the denial of Council's motion for a new trial.
VI. WHETHER THE EFFECT OF THE TRIAL COURT'S CUMULATIVE ERRORS PREVENTED COUNCIL FROM RECEIVING A FAIR TRIAL?
¶ 40. Council asks this Court to reverse her conviction based upon the combined effect of all of the alleged errors at her trial. Our supreme court set forth the standard in which we are to review the effect of cumulative errors on an appellant's right to a fair trial, stating:
upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.
Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss.2003). Having found no combined errors causing prejudicial impact so as to warrant reversal, we find this issue is without merit.
¶ 41. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND *905 CARLTON, JJ., CONCUR. KING, P.J. AND IRVING, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] If a striking party voluntarily proffers race-neutral reasons for the use of peremptory strikes before the trial court has made a finding that a prima facie case has been established, the issue of whether a prima facie case had in fact been established becomes moot. Brawner v. State, 872 So.2d 1, 10(¶ 28) n. 1 (Miss.2004) (citing Hernandez v. New York, 500 U.S. 352, 356, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The purpose of allowing such a practice is for the potential need for further record development. Brawner, 872 So.2d at 10-11(¶ 28).