LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. On September 11, 2008, a jury in the Leake County Circuit Court found Archie Hall guilty of manslaughter. Hall was sentenced to serve eighteen years in the custody of the Mississippi Department of Corrections. Hall now appeals, asserting the following issues: (1) the trial court erred in denying his hearsay objection; (2) the trial court erred in denying his request
 
 *983
 
 for a peremptory instruction; and (3) the trial court erred in refusing jury instruction D-6.
 

 FACTS
 

 ¶ 2. At approximately ten o’clock on the night of August 30, 2007, the Leake County Sheriffs Department was dispatched to a local residence. Upon arrival at the scene, Chief Deputy Mike Williams found a female on the floor of the residence with a gunshot wound to her chest. The woman was identified as Shirley Jobe. Hall, Jobe’s boyfriend, was on the floor beside Jobe holding her shoulders. Also present were Jobe’s mother, Willie Mae Jobe, and Jobe’s six children, three of whom were fathered by Hall.
 

 1Í 3. Hall informed Deputy Williams that Jobe had been playing with a semi-automatic handgun, and the gun discharged. Deputy Williams found the gun in the back room of the residence. The gun was lying on an ice chest. The magazine, which was loaded, was next to the gun.
 

 ¶ 4. At the hospital, Michael Harper, an investigator with the Leake County Sheriffs Department, testified that Hall told him he was attempting to teach Jobe how to shoot the gun, and it discharged. Greg Waggoner, Sheriff of Leake County, was present when Hall was interviewed at the jail after his arrest. Sheriff Waggoner testified that initially Hall had insisted that Jobe was playing with the gun, and it discharged. Sheriff Waggoner interrupted Hall and informed him that the autopsy did not support this version of events. Hall then informed Sheriff Waggoner that he and Jobe had been arguing that night about money. Hall stated that Jobe grabbed the gun and pointed it at him. Hall said he then approached Jobe, pushed the gun away from him, and attempted to grab the gun from her hand. Hall stated that the gun then .discharged. Hall reduced these statements to writing.
 

 ¶ 5. Willie Mae testified that she was in her room sleeping when she heard Jobe call out, “Willie, Archie shot me.” Willie Mae testified that Hall entered her room and admitted that Jobe had been shot. Willie Mae stated that Hall told her to inform emergency services that Jobe had been playing with the gun, and it had discharged. As Jobe was being transported to the hospital, Hall purportedly told Willie Mae that they needed to get their stories straight “because [Jobe] was playing with the gun and the gun went off, and I don’t want to go back to jail.” Jobe died later that night.
 

 ¶ 6. Dr. Steven Hayne, a forensic pathologist, performed the autopsy on Jobe and concluded her death was a homicide. Dr. Hayne found no evidence of tattooing, smudging, or flame injury on or around the gunshot wound. As a result of these findings, Dr. Hayne determined that the bullet shot into Jobe’s upper left chest was at least one-and-one-half feet away from Jobe’s body.
 

 ¶ 7. Over Hall’s objection, Dawn Biggart testified that two days prior to her death, Jobe came to Biggart’s place of employment. Biggart worked in a convenience store that Hall and Jobe patronized. Big-gart testified that Jobe said she had recently won a substantial amount of money at a local casino, but she had spent it all at the casino. Jobe told Biggart that during a telephone conversation with Hall, he had threatened to kill her over losing the money. Biggart testified that Hall purportedly had told Jobe that he would kill her when he returned from work. Hall worked for a barge company and would sometimes be gone for up to forty days at a time. It is unclear as to when Hall made the statement to Jobe that he was going to kill her. Hall did testify that he had spo
 
 *984
 
 ken with Jobe to discuss where she would pick him up from work on August 30. Hall admitted that they had argued during this phone conversation.
 

 ¶8. One of Jobe’s daughters, Davonta Jobe, testified for the defense. Davonta had ridden with Jobe that day to pick Hall up from work. Davonta testified that Jobe brought the gun with her at Hall’s request. At some point during the ride home, Hall asked Davonta for the gun. Davonta stated that she handed Hall the gun, and he placed it in the glove box. On cross-examination, Davonta admitted that Hall took the gun out of the glove box when they arrived home, but she did not see what he did with the gun. Jobe, Hall, and Davonta arrived home approximately thirty to forty-five minutes prior to Jobe’s death. Da-vonta, who was in the living room, heard a gunshot and then saw Jobe and Hall exit the back room. Davonta stated that Jobe called out for Davonta’s brother, fell to the floor, and told Davonta to tell the children that she loved them. Davonta said at one point, Jobe cried out, “Willie, I’ve been shot.”
 

 119. Hall testified on his behalf. Hall stated that he did not know that Jobe had won money at the casino. Hall testified that when he called Jobe to discuss arrangements to pick him up from work, he did not threaten to kill her. Hall did admit that the two had “verbal words” concerning the amount of money Jobe had been spending. Hall stated that he did put the gun in the glove box, but he did not remove it.
 

 DISCUSSION
 

 I. HEARSAY
 

 ¶ 10. In his first issue on appeal, Hall argues that the testimony of Biggart should have been excluded. The admissibility of testimonial evidence is left to the sound discretion of the trial court within the boundaries of the Mississippi Rules of Evidence, and the trial court will not be found in error unless it has abused its discretion.
 
 Harris v. State,
 
 861 So.2d 1003, 1018 (¶ 41) (Miss.2003). “Such error will warrant reversal only when the abuse of discretion has resulted in prejudice to the accused.”
 
 Id.
 

 ¶ 11. The trial court found that Biggart’s testimony was admissible as a present sense impression. Rule 803(1) defines a present sense impression as “[a] statement describing or explaining an event or condition made while the declar-ant was perceiving the event or condition or immediately thereafter.” Jobe, the de-clarant, received a phone call from Hall at some point prior to her death during which Hall purportedly threatened to kill her. Two days prior to her death Jobe told Biggart about these threats. Hall admitted that he spoke with Jobe in the days prior to her death, but he stated that he had called Jobe to discuss arrangements to pick him up from work. Hall did admit to arguing with Jobe about money. Since it is unclear from the record when Jobe received the allegedly threatening phone call from Hall, Jobe’s statements to Biggart do not fall under the present-sense-impression exception to the hearsay rule.
 

 ¶ 12. But, we find the statements made by Jobe to Biggart fall under the hearsay exception for then-existing mental condition or state of mind under Rule 803(3). Rule 803(3) has been held to encompass relevant statements made by victims prior to their death.
 
 See Harris,
 
 861 So.2d at 1019 (¶ 42);
 
 Council v. State,
 
 976 So.2d 889, 901 (¶28) (Miss.Ct.App.2007). We do not reverse the trial court’s judgment if the right result is reached even though for the wrong reason. This issue is without merit.
 

 
 *985
 
 II. PEREMPTORY INSTRUCTION
 

 ¶ 13. In his second issue on appeal, Hall argues that the trial court erred in refusing to grant a peremptory instruction. A peremptory instruction challenges the sufficiency of the evidence.
 
 Jefferson v. State,
 
 818 So.2d 1099, 1110-11 (¶ 30) (Miss.2002). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the denial of a peremptory instruction.
 
 Id.
 
 If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.
 
 Id.
 

 ¶ 14. Hall cites to
 
 Weathersby v. State,
 
 165 Miss. 207, 209, 147 So. 481, 482 (1933) for the proposition that if a defendant or his witnesses “are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [S]tate, or by the physical facts or by the facts of common knowledge.” However, the rule is inapplicable where a defendant’s account of the homicide is unreasonable, contradicted by the physical facts, or where the defendant has given conflicting versions of the homicide.
 
 Simpson v. State,
 
 993 So.2d 400, 407 (¶ 23) (Miss.Ct.App.2008).
 

 ¶ 15. Hall had several different versions of the shooting, all of which conflicted with the physical facts of the case. Furthermore, Willie Mae testified that Jobe stated that Hall had shot her and that Hall had asked her to inform the authorities that Jobe was playing with the gun when it discharged. From the evidence, reasonable jurors could have found Hall guilty of manslaughter. This issue is without merit.
 

 III. JURY INSTRUCTION
 

 ¶ 16. In his final issue on appeal, Hall argues that the trial court erred in refusing a circumstantial-evidence jury instruction. “A circumstantial[-]evidence instruction must be given unless there is some type of direct evidence such as eyewitness testimony, dying declaration, or confession or admission of the accused.”
 
 Deal v. State,
 
 589 So.2d 1257, 1260 (Miss.1991).
 

 ¶ 17. We find that the trial court properly refused a circumstantial-evidence instruction because Jobe’s statement prior to her death indicated that Hall had shot her, and Hall admitted that he had shot Jobe, although in an effort to disarm her. This issue is without merit.
 

 ¶ 18. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF EIGHTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
 

 KING, C.J., MYERS, P.J., GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. MAXWELL, J„ CONCURS IN PART AND IN THE RESULT. IRVING AND BARNES, JJ., CONCUR IN RESULT ONLY. CARLTON, J„ NOT PARTICIPATING.